**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 220391-U

Order filed January 30, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0391 Circuit No. 15-CF-88 |
| JEFFREY W. KELLER, | ) ) ) | Honorable Daniel Patrick Guerin, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BRENNAN delivered the judgment of the court.
Justices Peterson and Anderson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The circuit court properly dismissed defendant's postconviction petition at the first stage where it was not arguable that (1) the court denied defendant his right to counsel of choice and (2) appellate counsel was ineffective for failing to raise that issue on direct appeal, nor was defendant prejudiced.

¶ 2    Defendant, Jeffrey W. Keller, appeals from the first-stage denial of his postconviction petition arguing that the petition presented an arguable basis in law and fact. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    The State charged defendant with first degree murder (720 ILCS 5/9-1(a)(1) (West 2014)). On January 16, 2015, private counsel Paul DeLuca filed his appearance and represented defendant at his initial bond hearing. On March 3, 2015, Paul Moreschi filed his appearance as cocounsel. On pretrial status dates leading up to defendant's trial, both DeLuca and Moreschi appeared on defendant's behalf separately, and occasionally together. Both attorneys filed various pretrial motions and represented defendant at hearings on those motions.

¶ 5    On December 20, 2016, the court informed the parties that it had received a letter from defendant contending "a meaningful and conceivably detrimental difference of opinion between [his] attorneys and [defendant] *** for *** oral arguments for the motion to suppress statements." Defendant indicated that he was told that the court was "not interested in hearing oral arguments." Moreschi informed the court that the decision to proceed by way of argument on an earlier pretrial motion was trial strategy. Defendant wanted the court to know that he disagreed with his attorneys' decision not to hold a hearing. The court explained to defendant that these were "decisions of strategy and what [his attorneys] are going to do is for them to decide."

¶ 6    On April 21, 2017, both DeLuca and Moreschi appeared and proceeded on a motion for sanctions. When DeLuca began to explain the defense position, defendant interrupted. The court advised, "If you want to talk to your lawyer, step back and talk to him." DeLuca stated, "I have advised [defendant] he cannot participate in these proceedings with me as his attorney." Defendant asked, "am I allowed to go *pro se* on this matter *** ?" The court explained that defendant could not represent himself for the motion unless he wanted to proceed *pro se* for the remainder of his proceedings. Defendant agreed to continue the hearing with DeLuca's representation. Further into arguments, defendant interrupted the court again. The court responded, "If [defendant] truly want[ed] to proceed *pro se*" it would hear defendant's position regarding his "ability to represent

2

[him]self" and not arguments about the present motion. Defendant asked to postpone the motion. The court stated, "[w]e have a trial in two weeks. We are not going to postpone anything." The court recessed and permitted counsel and defendant time to speak. When defendant returned, he informed the court that he would continue with DeLuca's representation. At the conclusion of the hearing, the court denied the motion.

¶ 7         On April 27, 2017, Moreschi appeared as counsel. In anticipation of the "fast approaching" trial date, the court asked defendant if "[u]p to this point in time, *** have you explained to your attorneys everything that you want explained to them? Have you given them any witnesses that you want to have called so far?" Defendant indicated that he had not, and the court suggested that he "better do that quickly." The court asked if defendant was "satisfied with the representation of [his] attorney[.]" Defendant stated that Moreschi had "done a fabulous job" but defendant was "not happy at all" with DeLuca and had hesitations proceeding to trial. The court advised defendant to discuss his concerns with his attorneys.

¶ 8         On May 4, 2017, DeLuca appeared on behalf of defendant and addressed defendant's disagreement from the prior court date, stating

> "there was a disagreement with [defendant] and myself in terms of what arguments, what cases to cite to the court, things like that. I want to make it clear that I have told [defendant] several times, our functions as his lawyers and his roles, the four or five things he can do as a client. *** I discussed with him as well as Mr. Moreschi that you know we ultimately make the strategy decisions ourselves."

Counsel indicated they had retained two additional attorneys to sort through discovery and review it with defendant. Counsel stated,

"we actually have not filed one motion without showing it to [defendant] first or at least telling [defendant] this is what we are going to be doing. We have shown [defendant] *** probably 99 percent of the discovery. *** We probably have visited [defendant] more than any inmate in Du Page County has ever been visited. *** [A]t least 100 times over the last few years ***. And we have gone through all of our strategies with [defendant]. I want the record to be clear. So I don't want [defendant] to be saying *** that he doesn't know certain things when that's not the case. *** I'm going to fight to the end of the case as best as I can. So if we have a disagreement, if he's not happy with me, I don't take it personally. *** [W]e have gone through this time and time again and we are not going to agree on everything. We are going to do our best ***."

The court asked defendant if there was anything he wished to add. The following colloquy occurred:

"[DEFENDANT]: The issue here isn't about strategy. That's unfortunately more about preparation and attention to detail.

THE COURT: When you say preparation, what is it that you feel if anything that your attorneys have not done in preparation?

[DEFENDANT]: [The assisting attorney] and Mr. Moreschi have done a spectacular job. It's [DeLuca's] fluidity and competency around essential[ ] facts of the matter. I find that he's cramming to catch up weeks before trial. That in conversation he doesn't display the level of knowledge that I feel should be there two years after we started this process. It's not about strategy ***. It's about attention to detail and preparation and those concerns are real. *** I do appreciate

4

the professional etiquette that [DeLuca] has brought. *** My issue is I'm not consciously comfortable proceeding with [DeLuca]. I'm trying to evaluate what options are available to me. Incarceration limits greatly the ability to do that in a timely manner. ***

*** 

MR. DELUCA: He's wrong, Judge. I am prepared. I will be prepared. *** I don't agree necessarily with all the things [defendant] thinks are important.

THE COURT: *** I think in terms of this thing is set for trial in a week or so. We are going to go to trial.

[DEFENDANT][1]: Is there a pretrial objection? I apologize for interrupting. Is there a pre trial objection or is there something that I need to—I don't know technically what I would need to do.

THE COURT: I think you've made your record as to what your concerns are. *** If you're going to—well something was ineffective. It would have to be based on what takes place at the trial itself. You've raised some concerns. [DeLuca] has clearly indicated that he is prepared. It may just be a matter of disagreement as to whether he is or isn't. The proof will [be] in the trial itself."

The court continued the matter for trial.

¶ 9    On May 16, 2017, the matter proceeded to a jury trial where DeLuca and Moreschi represented defendant. During defendant's case-in-chief, DeLuca conducted defendant's direct examination. The jury found defendant guilty of first degree murder and made a separate finding

---

[1]The record shows that this statement was made by DeLuca. Defendant asserts that this attribution was a scrivener's error and contends that defendant made the statement. Given the content and context, and for the sake of defendant's argument, we will attribute these statements to defendant.

that defendant personally discharged a firearm, proximately causing the death of another person. The court denied defendant's motion for a new trial. The court imposed an aggregate sentence of 70 years' imprisonment. The Second District affirmed on direct appeal, holding the court did not err in denying defendant's motion to suppress evidence, and any potential error caused by "alleged technical violations *** was harmless, as the evidence against defendant was overwhelming." *People v. Keller*, 2020 IL App (2d) 170750-U, ¶¶ 1, 97.

¶ 10　　　　　On August 30, 2021, defendant filed a *pro se* postconviction petition. At the beginning of the more than 200-page petition, defendant generally asserted, "Any potential forfeiture, waiver, or procedural default of any issues raised in the postconviction petition stems from the incompetence or ineffectiveness of trial and/or appellate counsel." Approximately 100 pages later, defendant asserted that the "trial court abused its discretion and erred in denying a continuance for the substitution of retained counsel, therein unreasonably interfering with the right to counsel of choice." Defendant cited the colloquy with the court on May 4, 2017, as evidence that the court "abused its discretion and erred in denying the continuance for substitution of paid counsel of choice." Defendant listed instances in which he informed the court that he was dissatisfied with DeLuca, in that counsel failed to "source and prepare three expert witnesses critical to defense theory, failure to know and apply the law, failure to properly litigate evidentiary matters, and *** failure to attain and retain command of critical facts and elements of evidence" and defendant was unhappy with the manner DeLuca conducted defendant's direct examination. Defendant wanted Moreschi to conduct his direct examination, but Moreschi declined. Additionally, defendant believed DeLuca was suffering from "early stage d[e]mentia" and alleged that Moreschi told defendant that another client of DeLuca's had expressed similar concerns. Defendant concluded

6

that a breakdown in his attorney-client relationship forced defendant "to proceed with incompetent representation." The court summarily dismissed the petition and defendant appealed.

¶ 11                                    II. ANALYSIS

¶ 12        On appeal, defendant contends that the court improperly denied his first-stage postconviction petition which sufficiently alleged that the court denied his right to counsel of choice and appellate counsel was ineffective for failing to raise the issue on direct appeal. Specifically, defendant cites to the record showing his dissatisfaction with DeLuca prior to trial and preferring co-counsel, Moreschi. Defendant asserts that, in response to his concerns, the court told defendant that he could raise an ineffective assistance of counsel claim after the trial but did not give defendant an opportunity to retain new counsel. The defendant relies on this instance to show that he was denied his right to counsel of choice.

¶ 13        At the first stage of a postconviction proceeding, defendant's allegations, liberally construed and taken as true, need only present the gist of a constitutional claim. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). Petitions alleging ineffective assistance of counsel may not be dismissed at the first stage "if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *People v. Hodges*, 234 Ill. 2d 1, 17 (2009). A petition is frivolous and patently without merit if it has no arguable basis in either law or fact. *Id.* at 11-12. A petition lacks an arguable basis in law or fact when it is based upon an indisputably meritless legal theory or fanciful factual allegation. *Id.* at 16. To warrant second-stage proceedings related to a claim of ineffective assistance of appellate counsel, defendant "must show that the failure to raise the issue was objectively unreasonable and that, but for this failure, defendant's conviction or sentence would have been reversed." (Internal quotation marks omitted.) *People v. Dobbey*, 2011 IL App (1st) 091518, ¶ 37. If the underlying

7

issue is meritless, defendant cannot show prejudice for appellate counsel's failure to raise the issue on appeal. *Id.*

¶ 14 Initially, for the purposes of this appeal, we will liberally construe defendant's general statement of ineffective assistance of appellate counsel as adequately raising an ineffective assistance of appellate counsel claim and preserving this claim for appeal. See *People v. English*, 2013 IL 112890, ¶ 22 (the forfeiture doctrine is relaxed where forfeiture stems from the ineffective assistance of appellate counsel). We now turn our discussion to whether defendant's underlying claim held any arguable basis in law or fact. See *Hodges*, 234 Ill. 2d at 11-12.

¶ 15 The sixth amendment of the United States Constitution guarantees a criminal defendant the right to the assistance of counsel of his choice. U.S. Const., amend. VI; *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006); *People v. Baez*, 241 Ill. 2d 44, 104-105 (2011). "It is within the trial court's discretion to determine whether the defendant's right to selection of counsel unduly interferes with the orderly process of judicial administration." *People v. Tucker*, 382 Ill. App. 3d 916, 920 (2008). The factors bearing on whether a request for new counsel is merely a delaying tactic include (1) whether the defendant articulates an acceptable reason for wanting new counsel, (2) whether the defendant has continuously been in custody, (3) whether the defendant informs the circuit court of his efforts to obtain counsel, (4) whether the defendant has cooperated with his current counsel, and (5) how long current counsel has represented the defendant. *People v. Ramsey*, 2018 IL App (2d) 151071, ¶ 24. Where a court conducts an inquiry into the circumstances of defendant's request, and substitution counsel does not stand "ready, willing, and able to make an unconditional entry of appearance on defendant's behalf" the court does not abuse its discretion by denying defendant's request. (Internal quotation marks omitted.) *People v. Curry*, 2013 IL App (4th) 120724, ¶ 51.

8

¶ 16        In the present case, the record shows several instances in which defendant expressed to the court his dissatisfaction with DeLuca. In each instance, the court conducted an inquiry into defendant's concerns establishing defendant's concerns were related to either trial strategy or DeLuca's level of preparedness for trial. The court determined that defendant's concerns were unsupported where counsel was prepared and ready to proceed to trial. However, even if defendant's complaints could be construed as reasons for defendant to seek new counsel, defendant did not clearly articulate his desire to fire DeLuca, pair his potential desire for new counsel with any actions to obtain new counsel, indicate that he required time to hire new counsel, or file a motion to substitute counsel, and no other counsel appeared ready for trial or filed an appearance. See *People v. Ramsey*, 2018 IL App (2d) 151071, ¶ 24. To the extent that defendant contends he "could have simply fired DeLuca and proceeded to trial with Moreschi," defendant failed to articulate this request to the court, nothing in the record shows that defendant made attempts to secure Moreschi's representation as primary counsel, and defendant had Moreschi's representation in the form of co-counsel during the proceedings. Notably, despite disagreements with DeLuca, an inquiry by the court, and discussions with counsel after these instances, defendant repeatedly agreed to maintain DeLuca as counsel. See *id.*

¶ 17        Moreover, defendant made no affirmative request for different counsel or a continuance to obtain counsel that the court refused. We decline to find that the court should have construed defendant's question of whether there was a "pretrial objection" as a request for a new attorney and the court's response as a denial of his right to counsel of choice. At no point during defendant's proceedings, did the court inform defendant that he could not fire DeLuca or obtain another attorney.

¶ 18　　　　As defendant's claim that the court denied his right to counsel of choice is rebutted by the record, defendant cannot establish a potentially meritorious claim regarding the ineffective assistance of appellate counsel for failing to raise the issue on direct appeal. *Supra* ¶ 16; see *Dobbey*, 2011 IL App (1st) 091518, ¶ 37; see also *Hodges*, 234 Ill. 2d at 11-12. Therefore, the court properly dismissed defendant's first-stage postconviction petition. See *Dobbey*, 2011 IL App (1st) 091518, ¶ 37; see also *Hodges*, 234 Ill. 2d at 11-12.

¶ 19　　　　　　　　　　　　　　　　III. CONCLUSION

¶ 20　　　　The judgment of the circuit court of Du Page County is affirmed.

¶ 21　　　　Affirmed.