# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Prather, 2012 IL App (2d) 111104**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CLARENCE W. PRATHER, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-11-1104 |
| Filed | October 29, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for aggravated battery of a victim defendant knew to be pregnant, testimony that the victim had used a home pregnancy test kit and had shown defendant the positive result just before the assault was improperly excluded, since the evidence was not offered to prove the victim was in fact pregnant, but only as proof defendant had notice she was pregnant, no foundation was necessary, and there was no legal basis for exclusion. |
| Decision Under Review | Appeal from the Circuit Court of Lee County, No. 11-CF-109; the Hon. Ronald M. Jacobson, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Henry S. Dixon, State's Attorney, of Dixon (Lawrence M. Bauer and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| | |
| | Thomas A. Lilien and Steven E. Wiltgen, both of State Appellate Defender's Office, of Elgin, for appellee. |
| | |
| Panel | JUSTICE SCHOSTOK delivered the judgment of the court, with opinion. Presiding Justice Jorgensen and Justice Hutchinson concurred in the judgment and opinion. |

## OPINION

¶ 1    In this case, the State charged the defendant, Clarence Prather, with committing an aggravated battery on a victim whom the defendant knew to be pregnant (720 ILCS 5/12-4(b)(11) (West 2010)). Prior to trial, the State filed a motion *in limine* seeking permission for the alleged victim (B.R.) to testify that she had used a home pregnancy test kit and had shown the positive result to the defendant. The State sought to introduce this testimony as evidence that the defendant was aware that B.R. was pregnant, not as evidence that B.R. was in fact pregnant. The trial court held that, absent introduction of the test kit itself, the testimony would be unfairly prejudicial. It stated as a further basis for the bar that it did not deem a home pregnancy test to be acceptable as scientific evidence under the standard of *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). The State filed a certificate of impairment and now appeals. We reverse and remand.

¶ 2                            BACKGROUND

¶ 3    The State filed a five-count information against the defendant: two counts of aggravated battery (victim pregnant); one count of obstructing justice (720 ILCS 5/31-4(a) (West 2010)); and two counts of domestic battery (family or household member) (720 ILCS 5/12-3.2(a)(1) (West 2010)). All of these counts related to the defendant's alleged assault on B.R. on May 31, 2011. Prior to trial, the State filed a motion *in limine* seeking to admit B.R.'s testimony that, before the battery took place on May 31, 2011, she used a home pregnancy test that indicated that she was pregnant, and she "showed the result of the test" to the defendant. The State asked that the court admit "the result of the home pregnancy test" as nonhearsay to show that the defendant was aware that there was a substantial probability that the victim was pregnant.

¶ 4    The court held a hearing on all motions *in limine* on November 1, 2011. The court

-2-

initially assumed that the State was seeking to admit the test device as an exhibit. The State clarified that it was seeking to use B.R.'s testimony concerning the test. The court then asked if a proper foundation existed for that testimony.

¶ 5    The defendant argued that, even if the State were using the testimony to prove notice, there was indeed a problem with the foundation for the testimony and that, even beyond establishing that B.R. used the test properly, the State would have to validate the technology of the device under *Frye* standards. The State argued that any doubts about B.R.'s testimony would go to the testimony's weight, not its admissibility, and stated that it would agree to a limiting instruction informing the jurors that they could consider B.R.'s testimony only as evidence of notice to the defendant that B.R. was pregnant, not as evidence that she was actually pregnant. The court reserved ruling and asked the parties to present case law, stating that it "struggle[d] here with where a physical item is relied on for hearsay purposes and the weight that a jury might assign to that without delving into the issues [of scientific reliability] that [the defendant] raised."

¶ 6    The next day, when the hearing resumed, the court raised a question as to whether the issue was one of hearsay or was a different evidentiary issue:

"I had some concerns over whether or not *** it was actually hearsay or evidentiary [*sic*] issue and I believe if I recall correctly your argument was that you wished to have testimony introduced that the victim either showed and/or told the defendant the results of the test, but that my indication was that absent an evidentiary basis for that, that, that I was seriously concerned about whether that hearsay statement should be allowed ***."

The court told defense counsel that "I know you argued as I've just stated that there's some concern about whether or not it, in fact, is a hearsay statement subject to that kind of admission." Defense counsel responded:

"I agreed with the Court at the time and took it beyond the initial foundation to go back to the fact that it's a scientific based concept. That without foundation as to the science that goes into it and the foundation as to whether or not the person even followed the instructions and in applying that science I think it's inadmissible based on the lack of foundation."

¶ 7    The court noted that the State, to show the aggravating circumstance for the battery, had to prove that the defendant was aware that B.R. was pregnant. The State agreed that it needed to prove this, and reaffirmed that it wanted to use the testimony to prove the defendant's awareness of the pregnancy, not to prove the existence of the pregnancy. The court asked, "What's the difference between the two?" The State replied:

"If we were admitting it to prove *** the matter asserted, then it would be hearsay, but since it's only being used *** for *** notice to the defendant, then the jury can consider it only to the extent of the knowledge that the defendant had prior to committing the battery ***."

The court then asked:

"[W]hat you're asking me to authorize is for that element of the case to be proven by a hearsay statement instead of producing the actual item that has scientific value as evidence, am I correct?"

-3-

The State responded that it was not offering B.R.'s statement for the truth of the matter asserted, so the testimony would not be hearsay. The court next asked:

"You're trying to prove that part of your case by a statement, not the actual physical item that the woman had in her hand that she alleges that he saw. Am I correct?"

The State responded that B.R.'s displaying of the test was notice to the defendant. The court further asked:

"[W]hat you're asking me to authorize is for a jury to hear testimony from [B.R.] that she showed this item to the defendant without having the item available for review by anyone in this case and you're going to then argue to the jury on that basis that [the defendant] knew or should have known that [B.R.] was expecting because of that statement. Am I correct?"

The State said that that was correct.

¶ 8    The court then ruled against the State:

"It's my opinion that absent the item itself which could be reviewed by the defendant and testified to by [B.R.] that the value of [B.R.'s] statement allegedly as nonhearsay or an exception to hearsay is extremely prejudicial and, in fact, would be insufficient by itself to justify a conviction of the defendant and for that reason I'm going to deny the request to allow that."

The court further stated that, in making this ruling, it was "incorporating concerns that [defense counsel] had about whether a *Frye* hearing" was necessary:

"I've not heard any testimony that anywhere in the State of Illinois or for that matter in the country that *** a pregnancy test is actually allowed to be introduced in Court as evidence of pregnancy, and if that can't be done ***, then it doesn't make sense to me that testimony about that should be allowed either."

The State filed a certificate of impairment and a notice of appeal.

¶ 9                                    II. ANALYSIS

¶ 10    On appeal, the State argues that the court erred in barring it from presenting B.R.'s testimony that she showed the defendant the positive result of the home pregnancy test, because it was not seeking to use the testimony to prove, as a matter of scientific fact, that B.R. was pregnant, but only to show that B.R. believed herself to be pregnant and communicated that fact to the defendant. The State contends that, because the evidence was being offered to show the defendant's knowledge or belief, not the fact of pregnancy, the State was not required to establish the scientific credentials of the test pursuant to *Frye*. The State also argues that there was no other valid basis for excluding the evidence.

¶ 11    We begin by briefly noting what is *not* at issue here, namely, whether the proffered testimony is hearsay. On appeal, neither party contends that the evidence is hearsay. Further, although the trial court sometimes referred to the proffered testimony as a "hearsay statement," its comments as a whole indicate that it used the phrase to emphasize the fact that the State wanted to introduce B.R.'s testimony about an object instead of offering the object itself into evidence, and not as a conclusion that the testimony actually was hearsay. The trial

court did not make any finding that the evidence was inadmissible because it was hearsay. Indeed, evidence that is offered to show a person's knowledge or awareness of a circumstance and not to establish the truth of the circumstance is not hearsay. *People v. Jenkins*, 2012 IL App (2d) 091168, ¶ 17. Here, the State concedes that it must also establish that B.R. actually was pregnant, and it has stated that it intends to offer different evidence as to that element. Thus, the only issue here is whether B.R.'s testimony about the test result, and her showing of that result to the defendant, was admissible solely as proof that the defendant had been given notice that B.R. was pregnant at the time he allegedly battered her. Because the State is not seeking to introduce the testimony for the truth of the matter allegedly "stated" by the test, *i.e.*, to prove that B.R. was in fact pregnant, it is not excludable as hearsay. *Id.*

¶ 12    Moreover, we note that the State agreed that a limiting instruction should be given in connection with the testimony about the home pregnancy test result, advising the jury that the evidence was being presented only to establish notice to the defendant and could not be considered as evidence that B.R. was in fact pregnant. Such a limiting instruction would be an appropriate way to prevent the jury from considering the test result for the truth of the matter asserted–that B.R. was pregnant at the time of the battery. See *People v. Williams*, 233 Ill. App. 3d 1005, 1017 (1992). We therefore need not discuss the issue of hearsay further. We examine in turn each of the other possible bases for the trial court's ruling.


¶ 13                    The Applicability of *Frye*

¶ 14    The *Frye* test has been recently codified by Illinois Rule of Evidence 702. See Ill. R. Evid. 702, Comment (eff. Jan. 1, 2011) (noting that *Frye* is the source of the rule). Rule 702 states:

> "Where an expert witness testifies to an opinion based on a new or novel scientific methodology or principle, the proponent of the opinion has the burden of showing the methodology or scientific principle on which the opinion is based is sufficiently established to have gained general acceptance in the particular field in which it belongs." Ill. R. Evid. 702 (eff. Jan. 1, 2011).

The *Frye* standard as enunciated in Rule 702 refers only to expert testimony. However, the standard has been extended so that it may also be applied to technologies used by nonexperts. See *People v. Mann*, 397 Ill. App. 3d 767, 768-72 (2010) (applying *Frye* to determine whether a light detection and ranging (LIDAR) reading, a technology used by a nonexpert, was proper evidence of a vehicle's speed).

¶ 15    The *Frye* standard has two parts: the general acceptance rule, and the "new or novel" rule, which must be applied first to decide whether the general acceptance test is necessary. See *People v. McKown*, 236 Ill. 2d 278, 282-83 (2010). We review *de novo* a trial court's determination of whether a *Frye* hearing is necessary and whether a particular scientific method, technique, or test is generally accepted in the relevant scientific community. *In re Commitment of Simons*, 213 Ill. 2d 523, 531 (2004). "In conducting such *de novo* review, the reviewing court may consider not only the trial court record but also, where appropriate, sources outside the record, including legal and scientific articles, as well as court opinions

from other jurisdictions." *Id.*

¶ 16    "[T]he *Frye* standard dictates that scientific evidence is admissible at trial only if the methodology or scientific principle upon which the opinion is based is 'sufficiently established to have gained general acceptance in the particular field in which it belongs.' " *Id.* at 529-30 (quoting *Frye*, 293 F. at 1014). However, "the *Frye* test is necessary only if the scientific principle, technique or test *** is 'new' or 'novel.' " *McKown*, 236 Ill. 2d at 282-83.

¶ 17    In this case, the first step of the *Frye* standard is not met, because the technology that the State sought permission for B.R. to testify about–a home pregnancy test–is neither new nor novel. The second step, the general-acceptance test, is applied only when the proposed evidence is "based on a new or novel scientific methodology or principle." Ill. R. Evid. 702 (eff. Jan. 1, 2011). Here, the basic principle involved, that human chorionic gonadotropin (hCG) in the urine is an early sign of pregnancy, has been known since the 1920s; many of the methodologies that allowed easy detection of the hormone were developed in the 1970s. See A Timeline of Pregnancy Testing in *A Thin Blue Line: The History of the Pregnancy Test Kit*, Office of History, National Institutes of Health, http://www.history.nih.gov/exhibits/thinblueline/timeline.html (last visited Sept. 24, 2012) (giving the history of pregnancy testing). Home pregnancy tests have been in wide use for over 30 years and are regulated by the federal Food and Drug Administration. *Id.* This technology incontestably is not novel; so much so that the core scientific principles and methodologies even predate Illinois's adoption of the *Frye* standard, which did not begin until 1981. See *People v. Baynes*, 88 Ill. 2d 225, 240 (1981) (considering polygraph testing under the *Frye* standard). (This fact may account for the dearth of case law involving home pregnancy tests.) Thus, unless the particular home pregnancy test used by B.R. incorporated some fundamentally new methodology,[1] no *Frye* hearing was necessary to admit evidence regarding the test. See *Donnellan v. First Student, Inc.*, 383 Ill. App. 3d 1040, 1059 (2008) (where an imaging technique had been in broad use for more than a decade, having a hearing on the acceptance of the technique was unnecessary); see also *Seavey v. State*, 57 So. 3d 978, 979 (Fla. Dist. Ct. App. 2011) (affirming summary denial of defendant's postconviction claim that his attorney should have requested a *Frye* hearing regarding the victim's pregnancy test).

¶ 18    Moreover, no *Frye*-standard validation of a test result is necessary when the State is introducing it to show a defendant's knowledge of a condition. "Knowledge," in this sense, is not scientific or logical certainty, but only awareness of a "substantial probability." See 720 ILCS 5/4-5 (West 2010) (under the general definition of "acts knowingly" contained in the Criminal Code of 1961, "[k]nowledge of a material fact includes awareness of the substantial probability that the fact exists"). Our supreme court has affirmed that a

---

[1]We note that advances in packaging, such as the current generation of tests that create digital displays with words such as "PREGNANT" or "NOT PREGNANT," do not render a device "novel." See *Mann*, 397 Ill. App. 3d at 771 (approving of the proposition "that *Frye* requires review only of the general scientific process, not individual products employing the process").

defendant's knowledge of his victim's pregnancy can be demonstrated through circumstantial evidence that is far less scientific than a home pregnancy test result. See *People v. Shum*, 117 Ill. 2d 317, 361-62 (1987) (defendant's knowledge of victim's pregnancy established by the fact that victim was nine months' pregnant at the time of the attack, defendant had known the victim for four or five months before the attack, and the baby was of normal weight); *cf. People v. Ehlert*, 211 Ill. 2d 192, 237 (2004) (Thomas, J., dissenting, joined by Garman, J.) (mother's knowledge of her own pregnancy established in part by her report of a positive result on a home pregnancy test and in part by her previous experience with being pregnant). Accordingly, the trial court erred to the extent that it barred the evidence on the basis of *Frye*.

¶ 19 Was the Testimony Properly Barred for Lack of Foundation?

¶ 20 The trial court's second basis for its ruling was that, in order to lay a proper foundation for the proffered testimony by B.R., the State would need to introduce the home pregnancy test device itself into evidence. As the State did not propose to produce the test device at trial, the trial court believed that any testimony about the test would be "extremely prejudicial" and therefore barred the testimony. The grant or denial of a motion *in limine* is an evidentiary ruling that we review for an abuse of discretion. *People v. Starks*, 2012 IL App (2d) 110273, ¶ 20. A trial court abuses its discretion where its ruling is arbitrary, fanciful, or unreasonable, where no reasonable person would take the view adopted by the trial court (*People v. Anderson*, 367 Ill. App. 3d 653, 664 (2006)), or where its ruling rests on an error of law (*Cable America, Inc. v. Pace Electronics, Inc.*, 396 Ill. App. 3d 15, 24 (2009)).

¶ 21 Here, despite our commitment to honoring the trial court's exercise of its discretion, we are unable to locate a legal basis for the trial court's ruling among the rules of evidence. Relevant evidence ordinarily should be admitted, unless "otherwise provided by law." Ill. R. Evid. 402 (eff. Jan. 1, 2011). Evidence is relevant if it tends "to make the existence of any fact that is of consequence to the determination of the action either more probable or less probable." Ill. R. Evid. 401 (eff. Jan. 1, 2011); see also *In re A.W.*, 231 Ill. 2d 241, 256 (2008).

¶ 22 There can be no serious dispute that the evidence at issue–B.R.'s testimony that she showed the defendant the positive result of her home pregnancy test–would be relevant to the question of whether the defendant was given notice that, at the time that he allegedly battered B.R., there was a substantial probability that she was pregnant. We note that, to meet this standard, the evidence need not be conclusive. *Hawn v. Fritcher*, 301 Ill. App. 3d 248, 254-55 (1998). The defendant argues that here, the relevance of the proffered testimony was not clear because the State's description of how B.R. would testify–that she simply showed the defendant the home pregnancy test device–did not establish that the defendant knew what the device was or what it meant. However, the limited nature of the proffer did not make the proffered evidence irrelevant:

> " '[M]ost convictions result from the cumulation of bits of proof which, taken singly, would not be enough in the mind of a fair minded person. All that is necessary, and *all that is possible*, is that each bit may have enough rational connection with the issue to be considered a factor contributing to an answer.' " (Emphasis in original.) *Id.* at 255

(quoting *United States v. Pugliese*, 153 F.2d 497, 500 (2d Cir. 1945) (Learned Hand, J.)). Clearly, the defendant could challenge the proffered evidence–for example, by claiming that he never saw the pregnancy test device, that it did not show that B.R. was pregnant, that he did not understand what it meant, or even (as counsel argues on appeal) that he would not "know a home pregnancy test from a tapered roller bearing." However, the existence of these potential defenses does not mean that the proffered evidence can be barred for lack of relevance.

¶ 23    The trial court's comments reflect its discomfort with the fact that the State sought to rely on B.R.'s testimony about the pregnancy test rather than on the device itself. In essence, by introducing such testimony, the State would be asking the jury to accept B.R.'s statements that (1) the test was positive, and (2) she showed that positive result to the defendant. On the first of these points, the device itself (showing a positive result) clearly would be stronger evidence than B.R.'s word. However, the weaker evidentiary value of B.R.'s statements about the test is not a valid reason to bar such testimony. The credibility problems presented by the proffered testimony are no different than if B.R. were to testify that she told the defendant directly that she was pregnant. Either way, the defendant could argue that B.R. was lying, and either way, the jurors would have to resolve for themselves whether to believe B.R.'s statements. We do not believe that the fact that a supposedly accurate device (the home pregnancy test) was involved would be likely to influence this credibility determination.

¶ 24    We are troubled by the trial court's statement that the proffered evidence would be "extremely prejudicial." The prejudicial quality of evidence certainly can play a role in determinations about admissibility: relevant evidence may be excluded if the danger that it will unfairly prejudice the jury substantially outweighs its probative value. Ill. R. Evid. 403 (eff. Jan. 1, 2011). In this context, however, "unfairly prejudice" means that "the evidence in question will somehow cast a negative light upon a defendant for reasons that have nothing to do with the case on trial. [Citation.] In other words, the jury would be deciding the case on an improper basis, such as sympathy, hatred, contempt, or horror." *People v. Pelo*, 404 Ill. App. 3d 839, 867 (2010). Here, nothing in the record supports the trial court's statement that B.R.'s testimony about the test would be "extremely prejudicial" in the absence of the test device. We can see no way that B.R.'s testimony that she showed the defendant a home pregnancy test device indicating that she was pregnant would cast the defendant in an especially negative light, or that such testimony would be likely to arouse feelings of sympathy, horror, or disgust beyond those that might arise from the nature of the criminal charges against the defendant. Moreover, as noted, evidence should not be excluded on the basis of unfair prejudice unless the danger of such prejudice substantially outweighs its probative value. Ill. R. Evid. 403 (eff. Jan. 1, 2011); *Pelo*, 404 Ill. App. 3d at 867. Here, the proffered testimony has significant probative value, as it tends to show that B.R. communicated to the defendant that she was pregnant, while the danger of unfair prejudice is low. Accordingly, the proffered testimony may not be barred on the basis that it would be unfairly prejudicial.

¶ 25    The defendant contends that the court's ruling should be read as a narrow ruling based on the lack of a proper foundation. It is not clear to us what the defendant means by

"foundation" in this context. To the extent that the defendant is suggesting that, in order to admit the proffered testimony, the State would be obliged to establish that the home pregnancy test was in "proper working order" and that B.R. in fact used it correctly, this argument is misguided. When the State seeks to introduce evidence of test results *as evidence that a particular condition really existed*–as, for instance, when it seeks to introduce the results of a breath test to show that a defendant was intoxicated–it must first lay a foundation establishing that the test was performed in substantial compliance with the applicable standards. *People v. Ebert*, 401 Ill. App. 3d 958, 963 (2010). Here, however, the State is seeking to admit B.R.'s testimony about the test not as proof that she was really pregnant on a particular date, but to show that the defendant had notice that there was a substantial probability that she was pregnant. Because the proffered evidence would be introduced to show notice or knowledge, not a substantive fact, the State was not required to include a foundation regarding the test procedures in its proffer.

¶ 26 The defendant also argues that the home pregnancy test was of such uncertain probative value that any use of it would be improper. On this point, the defendant suggests that a court has the discretion to exclude particularly unreliable evidence, even if it is offered only to show a defendant's state of mind. He argues that, for instance, the State could not carry its burden of proving knowledge through evidence that a fortune teller told the defendant that B.R. was pregnant.

¶ 27 The potential unreliability of evidence may be attacked in several ways. One such method is by subjecting it to the *Frye* test prior to trial. As we have discussed, home pregnancy tests (unlike fortune tellers) have a sufficient history of widespread use and effectiveness that they should not be subject to *Frye*. A second method is to attack the evidence as unreliable at trial, and this method remains open to the defendant. If the defendant wishes to assert that the home pregnancy test taken by B.R. was so unreliable that he did not believe the result that B.R. showed him, he may present testimony, cross-examine B.R., and argue to that effect at trial. The jury can then take all of that evidence into account in determining credibility and reaching its ultimate conclusion.

¶ 28 Lastly, the defendant compares home pregnancy tests to polygraph ("lie detector") tests, the results of which may not be used as evidence. *People v. Taylor*, 101 Ill. 2d 377, 391 (1984). The supreme court has explained that polygraph tests pose a special danger because they suggest to jurors that they need not make their own credibility determinations (because the polygraph will tell them who is lying), but the tests are not sufficiently accurate and reliable to prove guilt or innocence. *Id.* at 391-92. By contrast, home pregnancy tests do not purport to "testify" about the credibility of defendants or others, and thus do not encourage the jurors to abdicate making their own credibility assessments. Although the defendant argues that home pregnancy tests might have a tendency to over-persuade a jury in excess of their actual reliability, they are no different from other forms of scientific evidence or test results in that regard, and their reliability may be challenged at trial in the same manner. Accordingly, there is no basis for extending the *per se* bar against polygraph evidence to home pregnancy tests.

¶ 29                                    III. CONCLUSION

¶ 30        In our review of the trial court's evidentiary ruling, we are mindful that the admissibility of evidence is an area in which trial courts exercise broad discretion, and we will reverse only for an abuse of that discretion. *People v. Sutton*, 349 Ill. App. 3d 608, 615 (2004). Even in discretionary rulings, however, legal errors receive special scrutiny.

> "[A] trial court must exercise its discretion within the bounds of the law. Where a trial court's exercise of discretion has been frustrated by [its application of] an erroneous rule of law, appellate review is required to permit the exercise of discretion consistent with the law." *People v. Williams*, 188 Ill. 2d 365, 369 (1999).

Here, the trial court's ruling was not in accord with the rules of evidence. As we cannot discern any sound legal basis for the exclusion of the proffered testimony of B.R. concerning the home pregnancy test, we reverse the trial court's order barring the proffered testimony and remand for further proceedings consistent with this opinion.

¶ 31        Reversed and remanded.