NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 190569-U

NO. 4-19-0569

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 18, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| JOSEPH FOX, | ) | No. 17CF969 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Knecht and Justice Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed defendant's conviction, finding a statement attributed to any one of the three codefendants and a text message from a codefendant were both admissible. Since there was no clear and obvious error, defense counsel was not ineffective for failing to object to otherwise admissible evidence.

¶ 2    In July 2017, the State charged defendant, Joseph Fox, with three counts of first degree murder (720 ILCS 5/9-1(a)(1) (West 2016)), as one of three individuals involved in the shooting death of Demesheo Lovelace. Each count of first degree murder alleged defendant committed the crime while armed with a firearm (730 ILCS 5/5-8-1(a)(1)(d)(i) (West 2016)).

¶ 3    In May 2019, a jury found defendant guilty of first degree murder but found the allegation he was armed with a firearm not proven. Defendant's motion for a new trial or for a judgment notwithstanding the verdict—filed in June 2019—was denied, and defendant

proceeded to a sentencing hearing. The trial court sentenced defendant to 30 years in the Illinois Department of Corrections (DOC).

¶ 4        On appeal, defendant argues he was denied both his right to confront witnesses and right to a fair trial when the State elicited statements of nontestifying codefendants implicating defendant in the murder. Defendant also claims defense counsel was ineffective for failing to object to those statements. We affirm.

¶ 5                                I. BACKGROUND

¶ 6        In May 2019, defendant and codefendant, Darelle Fox (defendant's brother), were tried jointly by agreement of the parties. The third defendant, Shawn Eubanks, who was tried separately, is not part of these proceedings. The State called the normal parade of police, civilian, and expert witnesses to establish the death of Demesheo Lovelace; observations of the shooting; identification of defendant; and the specifics of the crime scene; as well as to lay the foundation for the admission of relevant crime scene photos and evidence. Forensic pathologist Scott Denton stated he found approximately 10 gunshot wounds on different areas of Lovelace's body. Three of the gunshot wounds were to Lovelace's head, two of which penetrated the skull and by themselves would have been fatal.

¶ 7        Ashley Wheeler testified about her dating relationship with Lovelace and the fact that they had a one-year-old child together at the time he was killed. Wheeler testified that, at approximately 4:30 p.m. on July 2, 2017, she and Lovelace were at her home with two other people when she saw Lovelace exit the front door. Wheeler then heard "a lot of gunshots." After someone opened the door, Wheeler saw codefendant Fox outside her house wearing a baseball cap, chasing Lovelace while shooting at him. Wheeler testified she saw Fox running after Lovelace in the same direction where Lovelace's body was found. On cross-examination,

Wheeler stated Lovelace was "running for his life." She would later pick Fox out of a lineup as the person she saw chase and shoot at Lovelace. She was able to identify Fox because she had known him "[f]or some years," and he previously dated her aunt. Wheeler also testified she saw a dark blue van parked in front of her home, and she identified her cousin, codefendant Eubanks, in the back of the van with the sliding side door open shooting towards her car that was parked in front of her house. Wheeler further identified defendant as the driver, with whom she was familiar since they went to high school together. At the scene, Wheeler identified all three defendants to the responding officers as having been involved in the shooting of Lovelace. She later picked defendant out of a photo lineup and said she was a "thousand" percent certain he was the one driving the van.

¶ 8        Iesha Ballard, the 18-year-old cousin of defendant and codefendant Fox, testified she was at her uncle's house one week after the murder, where all three defendants were present. Ballard further testified as police officers approached the house, she heard one of the three defendants say, "they got us," but she was unable to identify which one made the statement.

¶ 9        The State presented evidence connecting a .40-caliber handgun found at the residence of Fox's fiancée with shell casings found near Lovelace's body. Stephanie Babb, Fox's fiancée at the time, testified pursuant to a grant of immunity from the State. Babb testified she found all three defendants at her residence after the shooting took place. She also observed two handguns and stated all three were acting strangely (listening to police scanners, watching the news, and pacing back and forth). Codefendants Fox and Eubanks took showers, and Fox asked Babb to buy lighter fluid, put their clothes and shoes into bags, and burn them, which she did. Upon orders from Fox, Babb drove the van to a nature preserve park, where another man, whom

she knew only as "Black," set the van on fire. Babb identified all three defendants out of a photo lineup and said that on the day defendants were arrested, "[Fox] texted me and said it was over."

¶ 10　　　　　The State then called Detective David Dailey with the Decatur Police Department. Detective Dailey described his experience and training in the acquisition and analysis of cell phone records in order to obtain location data from cell phone companies. Detective Dailey testified about the location of each of defendants' phones before and after the murder, and Babb's cell phone location following the murder.

¶ 11　　　　　Defendant elected not to testify. The jury found defendant guilty of first degree murder but found the State failed to prove defendant was armed at the time of the murder.

¶ 12　　　　　In June 2019, defendant filed a "Motion for a New Trial or, in the Alternative, For a Judgment Notwithstanding Verdict." At the sentencing hearing in July 2019, the trial court denied defendant's motion and sentenced defendant to 30 years in DOC.

¶ 13　　　　　This appeal followed.

¶ 14　　　　　　　　　　　　　II. ANALYSIS

¶ 15　　　　　On appeal, defendant argues (1) the admission of testimony from two witnesses regarding a statement and a text message were incriminating statements of "non-testifying codefendants" and denied defendant the opportunity to confront the witnesses against him and (2) defense counsel was ineffective for failing to object to these statements. We disagree and affirm.

¶ 16　　　　　　　　　　　　　A. Plain Error

¶ 17　　　　　In spite of defendant's failure to object at trial or raise these issues by way of a posttrial motion, defendant contends his procedural default should be excused and his claims considered under the plain-error doctrine. Plain errors or defects affecting substantial rights may

be noticed although they were not brought to the attention of the trial court. Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). The doctrine, however, serves as a narrow and limited exception to the general rule of procedural default. *People v. Ahlers*, 402 Ill. App. 3d 726, 733, 931 N.E.2d 1249, 1255 (2010). We may, in the exercise of our discretion, review unpreserved errors under either one of two instances:

> "(1) when 'a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error,' or (2) when 'a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *People v. Sebby*, 2017 IL 119445, ¶ 48, 89 N.E.3d 675 (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 410-11 (2007)).

The burden of persuasion rests with the defendant under both prongs of the plain-error doctrine. *Ahlers*, 402 Ill. App. 3d at 734. "If the defendant fails to meet his burden, the issue is forfeited, and [we] will honor the procedural default." *People v. Westfall*, 2018 IL App (4th) 150997, ¶ 75, 115 N.E.3d 1148. The first step of the analysis is to determine "whether there was a clear or obvious error at trial." *Sebby*, 2017 IL 119445, ¶ 49.

¶ 18                                    1. *"It Is Over"*

¶ 19          Although defendant couched the text message as a statement from a nontestifying codefendant to invoke his right of confrontation, we find Fox's text message, "it is over," was a vague, nonhearsay statement that does not implicate the confrontation clause at all. Defendant is

correct in saying that when a codefendant being tried jointly does not testify, his or her hearsay testimony implicating the defendant in the crime violates his right to confront and cross-examine the person who made the statement. See *Bruton v. United States*, 391 U.S. 123, 136 (1968). However, the admission into evidence of a codefendant's confession or admission of the crime violates a defendant's right of confrontation only when it *expressly implicates* defendant in the crime. See *People v. Williams*, 182 Ill. 2d 171, 184-85, 695 N.E.2d 380, 387 (1998) (citing *Bruton*, 391 U.S. at 137) ("the admission at joint trial of a statement by a nontestifying codefendant which expressly implicates defendant in the crime violates the defendant's constitutional right to confront witnesses against him"). The *Williams* court went on to note:

> "[F]or its use at a joint trial to be weighed against a defendant's right to confrontation, a codefendant's confession or admission need not expressly state that a defendant was involved in an offense; it is sufficient that it clearly imply the defendant's guilt when considered in light of other evidence against the defendant. [Citation.]" (Internal quotation marks omitted.) *Williams*, 182 Ill. 2d at 187.

¶ 20    During the State's direct examination of Babb, when asked: "On July 9th, *** do you remember the last communication or text you got from [Fox]?" Babb responded, "He texted me and he said it was over." There were no preceding or follow-up questions asked either on direct or cross-examination to place this statement in any context. Although Babb received the text on the day Fox was arrested, we know nothing else about it or to what it refers. Fox's text message to Babb stating "it is over" does not name defendant or implicate him in any way in Lovelace's murder. The statement is nebulous and rife with speculation on how it could be

interpreted. Fox and Babb were engaged and had been in a romantic relationship for over a year. For all we know, based on this record, having now been arrested for murder, Fox's text to her, "it is over," could just as easily be referring to their relationship and engagement. The statement is simply too ambiguous to attach any significance to defendant's involvement in the charged offense.

¶ 21        Even when considered in light of the other trial evidence of defendant's involvement in the murder, Fox's text, "it is over," does not imply anything about defendant, let alone his guilt. See *Williams*, 182 Ill. 2d at 187. It does not reference defendant, does not mention any aspect of the shooting and subsequent efforts to destroy evidence, and is not contextualized in any way. With the paucity of evidence surrounding the utterance, we are left to surmise for what purpose it was offered. If anything, it is a statement offered (1) to show knowledge of the content of the statement on the part of the person hearing it and not offered for the truth of the matter asserted (see *People v. Shoultz*, 289 Ill. App. 3d 392, 395-96, 682 N.E.2d 446, 449 (1997)) or (2) to show the recipient's knowledge or awareness of a circumstance and not to establish the truth of the circumstance. See *People v. Prather*, 2012 IL App (2d) 111104, ¶ 11, 979 N.E.2d 540 (evidence offered to show a person's knowledge or awareness of a circumstance and not to establish the truth of the circumstance is not hearsay). Defendant contends the State's reference to it in closing somehow invests the otherwise ambiguous statement with some level of incrimination. However, the State's argument was just that—not evidence and not to be considered as such by the jury, as they were so instructed. Thus, Fox's vague text message is nonhearsay which does not implicate defendant's confrontation clause rights, and we therefore find the admission of this statement was not "a clear or obvious error at

- 7 -

trial." *Sebby*, 2017 IL 119445, ¶ 49. "Finding no error, our plain-error analysis ends here." *People v. Hanson*, 238 Ill. 2d 74, 115, 939 N.E.2d 238, 262 (2010).

¶ 22                                    2. *"They Got Us"*

¶ 23          Similarly, defendant claims Ballard's hearsay testimony that she heard one of the three defendants say, "they got us," incriminated him and violated his right to confront the witness who made the statement. We disagree.

¶ 24          "Hearsay evidence is an out-of-court statement offered to prove the truth of the matter asserted, and is generally inadmissible unless it falls within a recognized exception." *People v. Cloutier*, 178 Ill. 2d 141, 154, 687 N.E.2d 930, 936 (1997). "A trial court's evidentiary rulings on hearsay testimony and any applicable exceptions are reviewed under an abuse-of-discretion standard." *People v. Burney*, 2011 IL App (4th) 100343, ¶ 40, 963 N.E.2d 430. This situation is similar to the previous one involving the "it is over" comment. There is no reference to defendant, the shooting, or the evidence surrounding it. It is true, in context, the jury was aware the police were approaching the house in which all three defendants were present, and the comment, "they got *us*," (emphasis added) implicated more than just the speaker. There is, however, no attribution of the statement to defendant or to either of the two codefendants. As such, defendant is one possible source of the statement overheard by Ballard. There are several recognized exceptions to the hearsay rule which would permit admission of the statement, attributed to no one in particular, regardless of who it came from.

¶ 25                                    a. Excited Utterance

¶ 26          Under Illinois Rule of Evidence 803(2) (eff. Sept. 28, 2018), an excited utterance is admissible whether the declarant is available to testify or not. "A statement is admissible as an excited utterance where it 'relat[es] to a startling event or condition' and is 'made while the

declarant was under the stress of excitement caused by the event or condition.' " *People v. Abram*, 2016 IL App (1st) 132785, ¶ 71, 50 N.E.3d 1197 (quoting Ill. R. Evid. 803(2) (eff. Jan. 1, 2011)). The exception is driven by the rationale that the event is so startling that it " 'temporarily stills the capacity for reflection, thus producing statements free of conscious fabrication.' " *Abram*, 2016 IL App (1st) 132785, ¶ 71 (quoting *People v. Harris*, 134 Ill. App. 3d 705, 711, 480 N.E.2d 1189, 1194 (1985)). " '[C]ourts consider the totality of the circumstances, including: the time elapsed between the event and the utterance, the nature of the event, the declarant's mental and physical condition, and the presence of self-interest.' " *Abram*, 2016 IL App (1st) 132785, ¶ 71 (quoting *People v. Dobbey*, 2011 IL App (1st) 091518, ¶ 44, 957 N.E.2d 142). To secure admission of an excited utterance, the proponent of the evidence must demonstrate: (1) the occurrence of an event or condition sufficiently startling to produce a spontaneous and unreflecting statement, (2) absence of time to fabricate, and (3) a statement relating to the circumstances of the occurrence. *People v. Sutton*, 233 Ill. 2d 89, 107, 908 N.E.2d 50, 62 (2009).

¶ 27        Although Ballard did not put a time frame on exactly when she heard the statement, she said that upon seeing several armed police officers approaching from the side of the house, she and defendant immediately ran inside where she heard one of the three defendants say, "they got us." Ballard could not identify which of the three defendants made the statement. Based on her testimony, the statement appears to have come immediately after seeing the police converging on the house. It is reasonable to assume the observation of police officers, with weapons drawn, approaching one's home in a surreptitious manner might be startling to anyone. Even more so for the three defendants who, after committing the murder, had gone to such lengths to destroy and otherwise hide evidence of their crime, thereby satisfying the three criteria

for admission of an excited utterance—(1) it came almost immediately after a sufficiently startling event, (2) the statement was made when there was no time for fabrication, and (3) the statement related to the circumstances of the occurrence. As we noted above, we are to consider the totality of the circumstances, including time, the mental and physical condition of the declarant, the nature of the event, and the presence or absence of self-interest. We find the statement was admissible irrespective of the availability of the declarant to testify. See *People v. Kinnerson*, 2020 IL App (4th) 170650, ¶¶ 30-31, 170 N.E.3d 142.

¶ 28                                  b. Statement Against Interest

¶ 29        Whether or not defendant was the one who said, "they got us," the statement would be admissible as a statement against interest under Illinois Rule of Evidence 804(b)(3) (eff. Jan. 1, 2011).

¶ 30        A statement is an exception to the hearsay rule if the statement at the time of its making tends to subject the declarant to criminal liability and is such that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. Ill. R. Evid. 804(b)(3) (eff. Jan. 1, 2011). The statement—as testified to by Ballard—implied criminal liability on the part of defendant as well as the two codefendants. No reasonable person in the position of the defendants would have made such an inculpatory statement unless he believed it to be true. Under the rule, when offered in a criminal case, "[a] statement tending to expose the declarant to criminal liability *** is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Ill. R. Evid. 804(b)(3) (eff. Jan. 1, 2011). "The primary consideration in determining whether an out-of-court statement against penal interest is admissible is whether the extra-judicial statement was made under circumstances which provide considerable assurance of its reliability by objective indicia of trustworthiness." 2 Robert J.

Steigmann & Lori A. Nicholson, Illinois Evidence Manual § 10:28 (4th ed. 2020) (citing *People v. Wilcox*, 407 Ill. App. 3d 151, 168, 941 N.E.2d 461, 477 (2010).

¶ 31        Here, we not only have the immediate circumstances confronting the three codefendants as police approached the house, but also (1) the substantial evidence against the defendants as testified to by Babb, (2) defendant's identification at the scene as the driver of the vehicle containing the other two identified shooters, (3) ballistics evidence, and (4) the cell phone records establishing locations at relevant dates and times. All this evidence would tend to validate the trustworthiness of the statement.

¶ 32                            c. Statement by a Party Opponent

¶ 33        If made by defendant, the statement is likewise admissible as a statement by a party opponent pursuant to Illinois Rule of Evidence 801(d)(2)(A) (eff. Oct. 15, 2015). Under the rule, a statement by a party opponent is not hearsay if it is offered against a party and is a party's own statement. Ill. R. Evid. 801(d)(2)(A) (eff. Oct. 15, 2015). "Such evidence is admissible if it is relevant to an issue in dispute and its probative value is not substantially outweighed by its prejudicial effect." *People v. Sanders*, 2021 IL App (5th) 180339, ¶ 45 (citing *People v. Aguilar*, 265 Ill. App. 3d 105, 113, 637 N.E.2d 1221, 1226 (1994)). Is the statement "they got us" prejudicial? Of course. "[A]ll evidence offered at trial is prejudicial in that it is introduced for the purpose of proving the proponent's case or undermining the opponent's case; if it were not prejudicial, it would not be relevant." (Emphasis omitted.) *People v. Zimmerman*, 2018 IL App (4th) 170695, ¶ 120, 107 N.E.3d 938. As we noted in *Zimmerman*, Illinois Rule of Evidence 403 (eff. Jan. 1, 2011) "only prohibits *unfairly* prejudicial evidence, and even then, only when the probative value is *substantially outweighed* by that prejudice." (Emphases in original.) *Zimmerman*, 2018 IL App (4th) 170695, ¶ 120.

¶ 34                                  d. Tacit Admission Rule

¶ 35             Lastly, if made by one of the codefendants, the statement would serve as the basis

for finding a tacit admission by silence on the part of defendant. "Under the tacit admission rule,

a defendant's silence may be introduced as a tacit or implied admission of guilt if the defendant

remains silent in the face of an accusation of criminal conduct." *People v. Ruiz*, 2019 IL App

(1st) 152157, ¶ 35, 126 N.E.3d 458. "When an incriminating statement is made in the presence

and hearing of the accused, and the accused fails to deny, contradict, or object to the statement,

both the statement and the fact that the accused failed to deny the statement are admissible [at

trial] as evidence of his acquiescence in its truth." *People v. Sneed*, 274 Ill. App. 3d 287, 295,

653 N.E.2d 1349, 1356 (1995). " '[A]ssent may be manifested by silence.' " *People v. Colon*,

2018 IL App (1st) 160120, ¶ 17, 117 N.E.3d 278 (quoting *People v. Childrous*, 196 Ill. App. 3d

38, 53, 552 N.E.2d 1252, 1262 (1990)). The statement need not be made in an accusatory tone,

as long as it is clear the defendant is being included in the illegal activity. *Colon*, 2018 IL App

(1st) 160120, ¶ 19. "The necessary elements for admissibility under the tacit admission rule are

(1) that defendant heard the incriminating statement, (2) that defendant had an opportunity to

reply and remained silent, and (3) that the incriminating statement was such that the natural

reaction of an innocent person would be to deny it." *People v. Donegan*, 2012 IL App (1st)

102325, ¶ 67, 974 N.E.2d 352.

¶ 36             Here, Ballard stated she and defendant both ran into the house together after

seeing the police approach. Immediately thereafter, the statement came from one of the three

defendants. According to Ballard, the police did not immediately enter the residence. Ballard

further testified her uncle stepped outside as she and defendant ran in, and she believed her uncle

was speaking to the officers while all three defendants were present inside when the comment

was made. The statement made as police approached the house that "they got us," which was not necessarily accusatory in tone, "nonetheless should have been evident that defendant was being painted or portrayed as a participant in illegal and prohibited activity." *People v. Miller*, 128 Ill. App. 3d 574, 584, 470 N.E.2d 1222, 1228 (1984). Defendant failed to say anything such as "what do you mean *us*?" or otherwise attempt to distance himself from the comment. Instead, he remained silent, and as a result, both the comment and his silence thereafter were admissible. See *Sneed*, 274 Ill. App. 3d at 295.

¶ 37 Since both the text and the comment were admissible under several different theories, we find there was no "clear or obvious error at trial" and decline defendant's invitation to review them under plain error. *Sebby*, 2017 IL 119445, ¶ 49. Absent error, there is no plain error. See *People v. Hood*, 2016 IL 118581, ¶ 18, 67 N.E.3d 213.

¶ 38                                   B. Ineffective Assistance of Counsel

¶ 39 Defendant claims defense counsel was ineffective for failing to object to both statements, "it is over" and "they got us." We disagree.

¶ 40 A defendant's claim of ineffective assistance of counsel is analyzed under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Veach*, 2017 IL 120649, ¶ 29, 89 N.E.3d 366. To prevail, "a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496, 931 N.E.2d 1198, 1203 (2010). A defendant must satisfy both prongs of *Strickland*, and the failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *People v. Clendenin*, 238 Ill. 2d 302, 317-18, 939 N.E.2d 310, 319 (2010). "We review a defendant's claim of ineffective assistance of counsel in a bifurcated fashion, deferring to the trial court's findings of fact unless they are contrary to the manifest weight of the

evidence, but assessing *de novo* the ultimate legal question of whether counsel was ineffective."

*People v. Manoharan*, 394 Ill. App. 3d 762, 769, 916 N.E.2d 134, 141 (2009).

¶ 41 As previously discussed, both statements were admissible for several reasons as either nonhearsay or an exception to the hearsay rule, and therefore there was no error by trial counsel in failing to raise an objection to admissible evidence. Thus, we will not find trial counsel ineffective for failing to raise it. See *People v. Bradford*, 2019 IL App (4th) 170148, ¶ 14, 123 N.E.3d 1285 (stating defense counsel will not be found ineffective for failing to assert a meritless objection); see also *People v. Williams*, 147 Ill. 2d 173, 238-39, 588 N.E.2d 983, 1009 (1991) ("[D]efense counsel is not required to undertake fruitless efforts to demonstrate his effectiveness.").

¶ 42                                   III. CONCLUSION

¶ 43 Because we have found the admission of the text message and statement was not error, there is neither plain error nor ineffective assistance of counsel. For these reasons, we affirm the trial court's judgment and sentence.

¶ 44 Affirmed.