NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210452-U

NO. 4-21-0452

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 14, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| BRYANT D. BELL, | ) | No. 20CF1560 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Dana Rhoades, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Knecht and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The State's evidence was sufficient to establish defendant's guilt beyond a
reasonable doubt of both aggravated battery and domestic battery.

¶ 2    Following a bench trial, the trial court found defendant, Bryant D. Bell, guilty of

one count of aggravated battery (720 ILCS 5/12-3.05(d)(2) (West 2018)) and two counts of

domestic battery (*id.* § 12-3.2(a)(1), (a)(2)), and sentenced him to 18 months' probation. Defendant

appeals, arguing the State failed to prove his guilt beyond a reasonable doubt. We affirm.

¶ 3                          I. BACKGROUND

¶ 4    In December 2020, the State charged defendant with multiple battery-related

offenses arising out of a physical altercation he had with the victim, Carly Haines, on December

17, 2020. In count I, the State charged defendant with aggravated domestic battery (*id.* § 12-3.3(a-

5)), alleging he intentionally strangled Haines, who was a family or household member, by

applying pressure to her neck and "impeding her normal breathing or the circulation of her blood." In count II, it charged defendant with aggravated battery (*id.* § 12-3.05(d)(2)), alleging he caused bodily harm to Haines by grabbing and pushing her while knowing she was pregnant. In counts III and IV, the State charged defendant with domestic battery (*id.* § 12-3.2(a)(1), (a)(2)), alleging he caused bodily harm to (count III), or made physical contact of an insulting or provoking nature with (count IV), Haines, a family or household member, by grabbing her by the head and pushing her.

¶ 5        In May 2021, the trial court conducted defendant's bench trial. The State presented testimony from two witnesses—Canzetta Jackson, an eyewitness to the altercation between defendant and Haines, and Drake Lambdin, a deputy with the Macon County Sheriff's Office. Jackson testified she worked with Haines at a business called Fuyao Glass. On December 17, 2020, she and Haines were leaving work when she observed defendant approach Haines. Jackson testified defendant was initially "being nice," saying to Haines: " 'Hey, sweetheart, how was your day?' " However, defendant then "grabbed" and "tussled" with Haines and called her "embarrassing 'B' words." Specifically, at one point, defendant stated to Haines: " 'You're embarrassing us, b***.' "

¶ 6        On examination by the State, Jackson further testified as follows:

"Q. Did you see from [defendant's] hand, did he actually grab [Haines's] throat?

A. I seen him grab her. Yeah, I seen him grab her.

Q. When you were describing it, it looked like you were grabbing at her [*sic*] shirt. Did he actually grab her throat?

A. Well, he grabbed her, because I thought he was going to grab her bag,

because he was like, 'Hey, honey,' like, and he grabbed her. And then he kind of like tossed her."

Jackson stated Haines "made a face" when defendant grabbed her. She testified: "[Haines's] face just looked uncomfortable. It looked like it hurt her."

¶ 7        During Jackson's testimony, the State presented a video recording from a security camera, which Jackson stated partially captured the incident between Haines and defendant. The video was admitted into evidence and played for the trial court.

¶ 8        Jackson further testified that during the altercation between defendant and Haines, Jackson told defendant to "get [his] hands off of [Haines] because she's pregnant." She also asked defendant: " 'Why are you hitting her? You know, she's pregnant.' " Jackson stated she last saw Haines in March 2021. At that time, Haines was noticeably pregnant.

¶ 9        On cross-examination, Jackson denied that Haines was "pushing on" defendant when he reached out to her. Instead, she stated defendant was "trying to swing [Haines] when he grabbed her." Jackson testified that after the physical altercation between defendant and Haines, they left together. She agreed "it was fair to say that *** Haines was angry at [defendant] that evening."

¶ 10        Lambdin testified he was assigned to investigate the December 17 incident. As part of his investigation, he went to Fuyao Glass and spoke with an employee who showed him a video recording of "the altercation that occurred." Additionally, he spoke with Haines, whom he observed with a "bruise" or "redness to the left cheek." Lambdin stated the injury appeared "to be fresh" and consistent with the altercation he observed on the video recording.

¶ 11        Lambdin testified he also spoke with defendant during his investigation. Defendant indicated he and Haines resided together and that he went to Fuyao Glass to pick Haines up from

work. He met Haines at the door, put his arm around her, and "pulled [her] close to him." Lambdin stated defendant denied putting his hand close to Haines's throat but asserted he did pull her close "by her neck." Defendant admitted that he and Haines got "into an altercation," reporting that when he was "pulling [her] close," she was "pulling away." He further acknowledged that there had been an "issue in his mind" regarding himself and Haines. He indicated to Lambdin that he was upset because Haines was pregnant and he "read messages" that questioned whether he was the father of Haines's unborn child. According to Lambdin, defendant believed the child was his.

¶ 12     On cross-examination, Lambdin testified that he was advised the redness or bruise on Haines's cheek "occurred that night." He stated he had not received specific "training to date marks or bruises." He acknowledged he could not tell by looking how old the redness or bruise was and, based on just his observations, he did not know if it occurred as a result of the incident at issue. On redirect examination, Lambdin testified he could tell the difference between a bruise or a scrape that was fresh versus one that was a few days old. He believed the injury he observed on Haines's cheek "was consistent with occurring very recently."

¶ 13     Defendant testified on his own behalf. He stated that during the December 17 incident, he grabbed Haines's bag and put his arm around her. However, Haines "ducked from up under [him]" and "moved back." Defendant stated he then picked Haines's bag up off the ground and the two then left in his truck. He denied that he strangled or hit Haines, or that he caused bruising to her face.

¶ 14     On cross-examination, defendant further denied that he called Haines "a b***." He maintained the only words between the two of them were " '[l]et's go.' " Defendant also denied that he and Haines were in a dating relationship at the time of the incident. When asked whether Haines was pregnant, the following colloquy occurred:

"A. Not that I'm aware of. I've just seen messages on Facebook to proclaim that she was, but I didn't see any evidence from her that she was directly pregnant.

Q. Is she pregnant?

A. Well, now, yes, she's pregnant, I guess. Yeah, yeah.

Q. When you spoke with the police officer, did you have a discussion with him about her being pregnant?

A. Yeah. I said I seen messages saying that she was pregnant, but I had no physical evidence like in front of me to say *** Haines is pregnant.

Q. Okay. But did you believe her to be pregnant?

A. Well, she said it. Then I just went with it, but that ain't what—you know."

¶ 15 Defendant denied that he was unhappy or upset about the messages suggesting Haines "was sleeping with someone else." He maintained that when he put his arm around Haines outside Fuyao Glass, she pushed him away because "[s]he was upset that [he] found out about these messages." Defendant asserted that after Haines pushed him, he immediately let her go, picked up her bag, and walked to his vehicle.

¶ 16 The trial court found defendant not guilty of aggravated domestic battery as charged in count I but guilty of aggravated battery and domestic battery as charged in counts II, III, and IV. In June 2021, defendant filed a posttrial motion arguing the evidence presented at his trial was insufficient to sustain the court's findings of guilt. In July 2021, the court denied defendant's motion and sentenced him to 18 months' probation.

¶ 17 This appeal followed.

¶ 18                                   II. ANALYSIS

¶ 19　　　　　On appeal, defendant challenges the sufficiency of the State's evidence against him. He contends the State failed to prove beyond a reasonable doubt essential elements of the charged offenses in counts II, III, and IV, including that (1) Haines was pregnant at the time of the December 17 incident and he knew about her pregnancy, (2) he caused Haines bodily harm, or (3) he made physical contact of an insulting or provoking nature with Haines.

¶ 20　　　　　"The State has the burden of proving beyond a reasonable doubt each element of an offense." *People v. Gray*, 2017 IL 120958, ¶ 35, 91 N.E.3d 876. "Where the defendant challenges the sufficiency of the evidence used to convict him, the reviewing court must determine, considering the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements met beyond a reasonable doubt." *People v. Swenson*, 2020 IL 124688, ¶ 35, 181 N.E.3d 116. "This standard of review applies in all criminal cases, whether the evidence is direct or circumstantial." *People v. Jackson*, 2020 IL 124112, ¶ 64, 162 N.E.3d 223. "[C]ircumstantial evidence that meets this standard is sufficient to sustain a criminal conviction." *Id.*

¶ 21　　　　　We note it is the trier of fact's responsibility to determine the credibility of witnesses, decide the weight to give witness testimony, resolve conflicts in the evidence, and draw reasonable inferences from the evidence. *Swenson*, 2020 IL 124688, ¶ 36. "A trier of fact is not required to disregard inferences that flow normally from the evidence before it, nor must the trier of fact search out all possible explanations consistent with innocence and raise those explanations to a level of reasonable doubt." *People v. Eubanks*, 2019 IL 123525, ¶ 95, 160 N.E.3d 843. "[T]he trier of fact must find only that the evidence taken together supports a finding of the defendant's guilt beyond a reasonable doubt." *Jackson*, 2020 IL 124112, ¶ 70.

¶ 22　　　　　On appeal, a reviewing court should not retry the defendant or substitute its

judgment for that of the trier of fact. *People v. McLaurin*, 2020 IL 124563, ¶ 22, 162 N.E.3d 252. Further, "[a]ll reasonable inferences are drawn in favor of a finding of guilt." *Swenson*, 2020 IL 124688, ¶ 35. "A criminal conviction will be set aside on appeal when the evidence is so improbable or unsatisfactory that there remains a reasonable doubt of the defendant's guilt." *People v. Wise*, 2021 IL 125392, ¶ 27, 182 N.E.3d 656.

¶ 23　　　　As stated, defendant was found guilty of aggravated battery and two counts of domestic battery. As charged in this case, "[a] person commits aggravated battery when, in committing a battery, other than by discharge of a firearm, he or she knows the individual battered to be *** [a] person who is pregnant." 720 ILCS 5/12-3.05(d)(2) (West 2018). "A person commits battery if he or she knowingly without legal justification by any means *** causes bodily harm to an individual." *Id.* § 12-3(a)(1). Additionally, "[a] person commits domestic battery if he or she knowingly without legal justification by any means *** [c]auses bodily harm to any family or household member" or "[m]akes physical contact of an insulting or provoking nature with any family or household member." *Id.* § 12-3.2(a)(1), (a)(2).

¶ 24　　　　　　　　　　A. Haines's Pregnancy

¶ 25　　　　Initially, defendant maintains the State's evidence was insufficient to prove either that Haines was pregnant at the time of the December 17 incident or that he knew she was pregnant. He points out that Haines did not testify at his trial and the State did not present any medical evidence "to establish when [Haines] became pregnant." Additionally, he contends that although the evidence may have showed he believed Haines was pregnant on December 17, 2020, it fell short of establishing that he had actual knowledge she was, in fact, pregnant. We disagree.

¶ 26　　　　As indicated above, a criminal conviction may be sustained based upon circumstantial evidence. *Jackson*, 2020 IL 124112, ¶ 64; see also *People v. Patterson*, 217 Ill. 2d

407, 435, 841 N.E.2d 889, 905 (2005) (" 'A conviction can be sustained upon circumstantial evidence as well as upon direct, and to prove guilt beyond a reasonable doubt does not mean that the jury must disregard the inferences that flow normally from the evidence before it.' " (quoting *People v. Williams*, 40 Ill. 2d 522, 526, 240 N.E.2d 645, 648 (1968))). "Circumstantial evidence is proof of certain facts and circumstances from which the trier of fact may infer other connected facts that human experience dictates usually and reasonably follow." (Internal quotation marks omitted.) *People v. Day*, 2019 IL App (4th) 160217-B, ¶ 47, 147 N.E.3d 195.

¶ 27 Here, although Haines did not testify, and the State did not present medical evidence of her pregnancy, evidence was presented from which the fact of Haines's pregnancy on December 17, 2020, could reasonably be inferred. The record shows Jackson testified she last saw Haines in March 2021, approximately three months after the altercation between defendant and Haines. According to Jackson, at that time, Haines was noticeably pregnant. From such evidence, it logically follows that Haines became pregnant some weeks or months prior to March 2021.

¶ 28 The State's evidence also showed that at the time of the December 17 incident, defendant reported to the police that he and Haines resided together. He stated that Haines was pregnant and that there was an "issue" regarding who fathered her unborn child. Defendant believed the child was his but asserted he "read messages" that questioned his paternity. Taken together, Jackson's testimony and defendant's statements to the police were sufficient to support a reasonable inference that Haines was pregnant on December 17, 2020. We note defendant's own testimony further supports the fact of Haines's pregnancy and the inference that her pregnancy dated back to the incident in question. Specifically, defendant acknowledged that Haines was pregnant at the time of his May 2021 trial and indicated it was his belief on December 17 that Haines was pregnant.

¶ 29    As with the fact of Haines's pregnancy, defendant's knowledge of Haines's pregnancy could also be established through circumstantial evidence. *People v. Prather*, 2012 IL App (2d) 111104, ¶ 18, 979 N.E.2d 540 ("Our supreme court has affirmed that a defendant's knowledge of his victim's pregnancy can be demonstrated through circumstantial evidence."). " 'Knowledge,' in this sense, is not scientific or logical certainty, but only awareness of a 'substantial probability.' " *Id.* (citing 720 ILCS 5/4-5 (West 2010) ("Knowledge of a material fact includes awareness of the substantial probability that the fact exists.")).

¶ 30    Clearly, at trial, defendant attempted to minimize his relationship with Haines and his awareness of her pregnancy. However, the State's evidence established that in December 2020, he lived with Haines and indicated to the police that the two had a sexual relationship. Defendant also reported that Haines was pregnant, he believed he was the unborn child's father, and his receipt of information that questioned his paternity precipitated the physical altercation with Haines. We find such evidence was sufficient to establish defendant's knowledge of Haines's pregnancy on December 17, *i.e.*, his awareness of a substantial probability that Haines was pregnant.

¶ 31                    B. Bodily Harm

¶ 32    Defendant next points out that the charges against him for aggravated battery in count II and domestic battery in count III required the State to prove that his actions caused Haines bodily harm. He contends that although Lambdin observed redness or a bruise on Haines's cheek following the December 17 incident, the evidence was insufficient to establish that he caused the mark Lambdin observed. Again, we disagree.

¶ 33    The State's evidence showed defendant approached Haines as she exited her place of employment and a physical altercation ensued. Jackson testified defendant "grabbed" Haines

and "tossed" her. She observed Haines "ma[ke] a face," which indicated to Jackson that Haines was "uncomfortable" or "hurt." The State also submitted a recording of the incident that was consistent with Jackson's testimony. On the recording, defendant appeared to have his hands on Haines's upper body and was forcefully and aggressively moving her body around. Evidence further showed that after the incident, Lambdin observed Haines with redness or a bruise on her left cheek. He testified the "bruise" or "redness to the left cheek" appeared "fresh" or "recent," and that it was consistent with the physical altercation he observed on the video recording.

¶ 34       We note bodily harm requires that a victim suffer "some sort of physical pain or damage to the body, like lacerations, bruises[,] or abrasions, whether temporary or permanent." *People v. Mays*, 91 Ill. 2d 251, 256, 437 N.E.2d 633, 635-36 (1982). Here, the trial court could reasonably infer that the mark Lambdin observed on Haines after the December 17 incident was caused by defendant's actions during the physical altercation. However, even if we were to conclude that the evidence did not support a finding of physical injury to Haines's body as a result of the altercation with defendant, the evidence also supports a reasonable inference that defendant's actions caused Haines to experience "physical pain." As noted, Jackson testified Haines made facial expressions when defendant grabbed her that indicated she was being "hurt" by defendant. Accordingly, we find the State's evidence was sufficient to prove bodily harm.

¶ 35                    C. Contact of an Insulting or Provoking Nature

¶ 36       In count IV, the State charged defendant with domestic battery based on the claim that he made physical contact of an insulting or provoking nature with Haines. Defendant maintains the State's evidence was insufficient to establish such contact. He contends that Haines's reaction after the incident does not support an inference that she was insulted or provoked because she willingly left the scene with defendant and there was no evidence that she was crying or afraid

to go with him. Defendant also points to his own testimony that Haines was angry with him before the physical altercation and, thus, her actions in "ducking under [his] arms and pushing him away do not provide proof that she found the contact insulting or provoking."

¶ 37        The victim of a battery does not have to testify that he or she was insulted or provoked. *People v. Wrencher*, 2011 IL App (4th) 080619, ¶ 55, 959 N.E.2d 693. Instead, "the trier of fact can make that inference from the victim's reaction at the time." *Id.* Further, "[w]hile conduct need not cause bodily harm in order to be insulting or provoking [citation], imagination strains to conjure a scenario in which the deliberate infliction of bodily harm is not insulting or provoking." *People v. Moffett*, 2019 IL App (2d) 180964, ¶ 43, 148 N.E.3d 736.

¶ 38        Here, the State's evidence in the present case supports the inference that defendant's physical contact with Haines was "of an insulting or provoking nature." 720 ILCS 5/12-3.2 (a)(2) (West 2018). As stated, the evidence showed defendant grabbed Haines by her upper body and forcefully "tossed" or moved her body around. Jackson testified that during the altercation, defendant called Haines derogatory names. Additionally, after she was grabbed, Haines made facial expressions that indicated she was uncomfortable or in pain as a result of the contact. From Haines's reaction, the trial court could reasonably infer that Haines was insulted or provoked at the moment defendant was physically aggressive toward her.

¶ 39        We find defendant's description of the incident—that Haines was angry and ducked under his arm and pushed him away—is at odds with Jackson's testimony and the security camera footage. Further, neither the fact that Haines willingly left with defendant nor the absence of evidence that she cried following the altercation necessitates a finding that she could not have been insulted or provoked by defendant's physical contact. As expressed above, on review, all reasonable inferences must be drawn in favor of guilt. When viewed in the light most favorable to

the State, the evidence was sufficient to establish defendant's guilt beyond a reasonable doubt.

¶ 40                                    III. CONCLUSION

¶ 41          For the reasons stated, we affirm the trial court's judgment.

¶ 42          Affirmed.